IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,                    )<br>                                                                )<br>                        Plaintiff,                      )<br>                                                                )<br>              vs.                                              )<br>                                                                )<br>JASMINE DANIELLE HOLLIMAN,       )<br>SARAH ROSE NOBLE, HILARY           )<br>JEANETTE PATTERSON, and              )<br>**MICHAEL McGEEHAN TUCKER**,      )<br>                                                                )<br>                        Defendants                  ) | Case No.: A05-099 Cr. (JWS) |

## BAIL BRIEFING

COMES NOW Michael Tucker, by and through counsel David R. Weber, of the firm of Vasquez & Weber, P.C., and submits this, his Bail Briefing. For the reasons set forth below, portions of the reports (dated February 8, March 3 and March 6, 2006) of the United States Probation and Pretrial Services Office ("USPO") should be struck from the record and not considered by this Court.

### I.    THE TESTING CONDITION IS ILLEGAL

Alaska resides within the Ninth Circuit. Lat year the Ninth Circuit addressed the propriety of requiring random drug testing from pre-trial detainees. ***The Court condemned the practice***. United States v. Scott, 424 F.3d 888 (9th Cir. 2005).

> It may be tempting to say that such transactions--where a citizen waives certain rights in exchange for a valuable benefit the government is under no duty to grant--are always permissible and, indeed, should be encouraged as contributing to social welfare. After all, Scott's options were only expanded when he was given the choice to waive his Fourth Amendment rights or stay in jail. Cf. Doyle v. Cont'l Ins. Co., 94 U.S. 535, 542, 24 L. Ed. 148 (1877). But our constitutional law has not adopted this philosophy wholesale. The "unconstitutional conditions" doctrine, cf. Dolan v. City of Tigard, 512 U.S. 374, 385, 129 L. Ed. 2d 304, 114 S. Ct. 2309 (1994), limits the government's ability to exact waivers of

rights as a condition of benefits, even when those benefits are fully discretionary. Government is a monopoly provider of countless services, notably law enforcement, and we live in an age when government influence and control are pervasive in many aspects of our daily lives. Giving the government free rein to grant conditional benefits creates the risk that the government will abuse its power by attaching strings strategically, striking lopsided deals and gradually eroding constitutional protections. Where a constitutional right "functions to preserve spheres of autonomy . . . unconstitutional conditions doctrine protects that [sphere] by preventing governmental end-runs around the barriers to direct commands." Kathleen M. Sullivan, Unconstitutional Conditions, 102 Harv. L. Rev. 1413, 1492 (1989); see generally id. at 1489-1505; Richard A. Epstein, The Supreme Court, 1987 Term--Foreword: Unconstitutional Conditions, State Power, and the Limits of Consent, 102 Harv. L. Rev. 5, 21-25 (1988).

United States v. Scott, 424 F.3d at 890, 891. [footnote omitted].

This Court conditioned Mr. Tucker's release on a bail condition that the Ninth Circuit has specifically condemned as violative of the Fourth Amendment. The condition that is unlawful.

## II.   ADDITIONAL ILLEGALITIES

### A.   The Release, And Non Bail Use Of Drug Treatment Information

The Court required Mr. Tucker to sign a release permitting Rite, Inc. to provide information to the USPO so that his program attendance and compliance could be monitored. The Defense raised two related concerns: self-incrimination and the potential non-bail uses of Mr. Tucker's Rite Inc. records. The USPO representative informed the Court that the USPO would use Mr. Tucker's disclosed records for purposes other than bail. The Court refused to preclude such uses and required Mr. Tucker to make whatever disclosures Rite Inc. required, incriminating or no, as a condition of his release.

Mr. Tucker again respectfully observes that conditioning his release on the surrender of his right against self-incrimination is unconstitutional. Though <u>Scott</u> is a Fourth Amendment case, its underlying logic would apply with even greater force to a requirement to surrender a Fifth Amendment right to silence as a condition of release.

What Mr. Tucker did not argue at the time, but which has become apparent since, is that the uses to which his drug treatment records may be put is strictly limited by Federal law and that the uses this Court has endorsed, and the even greater uses the USPO has attempted to secure, are unlawful.

There are precise restrictions upon the disclosure and use of drug abuse patient records. 42 U.S.C. § 290ee-3. Court use of drug treatment records is governed by 42 U.S.C. § 290ee-3(b)(2)(C).

> If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

This Court did not engage in that analysis. Pursuant to 42 U.S.C. § 290ee-3(c), absent this Court's Order based on the above analysis, the USPO is forbidden to use Mr. Tucker's drug treatment records for "any investigation of a patient."

Nor were the regulations governing the details of such disclosures and authorized by 42 U.S.C. § 290ee-3(g) honored. Criminal justice drug treatment referrals, the releases they generate and the uses to which the resultant information may be put are governed by 42 C.F.R. § 2.35.

> Disclosures to elements of the criminal justice system which have referred patients.
>
> (a) A program *may disclose information about a patient to those persons within the criminal justice system which have made participation in the program a condition of* the disposition of any criminal proceedings against the patient or of the patient's parole or other *release from custody* if:
>
>> (1) The *disclosure is made only to those individuals within the criminal justice system who have a need for the information in connection with their duty to monitor the patient's progress* (e.g., a prosecuting attorney who is withholding charges against the patient, a court granting pretrial or posttrial release, probation or parole officers responsible for supervision of the patient); and
>>
>> (2) The patient has signed a written consent meeting the requirements of Sec. 2.31 (except paragraph (a)(8) which is inconsistent with the revocation provisions of paragraph (c) of this section) and the requirements of paragraphs (b) and (c) of this section.
>
> (b) Duration of consent. The written consent must state the period during which it remains in effect. This period must be reasonable, taking into account:
>
>> (1) The anticipated length of the treatment;
>>
>> (2) The type of criminal proceeding involved, the need for the information in connection with the final disposition of that proceeding, and when the final disposition will occur; and
>>
>> (3) Such other factors as the program, the patient, and the person(s) who will receive the disclosure consider pertinent.
>
> (c) Revocation of consent. The written consent must state that it is revocable upon the passage of a specified amount of time or the occurrence of a specified, ascertainable event. *The time or occurrence upon which consent becomes revocable may be no later than the* final disposition of the *conditional release* or other action *in connection with which consent was given.*
>
> (d) Restrictions on redisclosure and use. A person who receives patient information under this section *may redisclose and use it only to carry out that person's official duties with regard to the patient's conditional release* or other action in connection *with which the consent was given.*

[Emphasis supplied.] The interplay between 42 C.F.R. § 2.35(a)(1), (c) and (d) makes it clear that the use of drug treatment disclosures ordered for purposes of

bail at a subsequent trial and sentencing is forbidden. Yet, because the USPO told the Court that it uses the disclosures for those additional purposes, the Court declined to limit the USPO.

Still, the USPO went further, demanding that Mr. Tucked sign a release far in excess of this Court's Order and one that is in direct violation of the C.F.R. The USPO did not use the Rite, Inc. Form, it used its own. Attached as Exhibits A and B, respectively are the release the Government claims Mr. Tucker refused to sign and the Rite, Inc. standard form release.

<u>Scott</u> aside, the USPO release included items that could not possibly have concerned bail compliance. For example, "effectiveness of therapy" is not a bail concern. "[T]ype and dosage of medication," "treatment response," "psychological and vocational" test results as well as "prognosis" are, at best, sentencing concerns that have nothing to do with Mr. Tucker's ability to show up for trial. While the release does state "[h]ow much and what kind of information is to be disclosed," 42 C.F.R. 2.31(a)(5) in doing so it reveals itself as seeking far more than the Court authorized or intended. Then there is the overarching sweep of "confidential information in its records, possession, or knowledge, of whatever nature may now exist or come to exist to the" USPO. Could it be any broader?

The USPO effort to comply with the 42 C.F.R. 2.31(a)(4) requirement to reveal "[t]he purpose of the disclosure" is, frankly, gibberish: "The information which I now authorize for release is to be used in connection with my participation in the aforementioned program which has been made a condition of my pretrial release." That "purpose is called into sever question when considered in context of the reference to disclosing the information to the "United States Parole Commission when necessary for the purpose of discharging its supervisory

duties over me" and "I also understand that revoking this authorization before I satisfy the condition of my supervision that requires me to participate in tine program will be reported to the Court. My revocation of authorization under such circumstances could be considered a violation of a condition of my post-conviction supervision."

Nor does Mr. Tucker's "release from supervision" provide a "date, event, or condition must insure that the consent will last no longer than reasonably necessary to serve the purpose for which it is given." 42 C.F.R. 2.31(a)(6). To what "supervision" does the release refer? Pretrial? Post trial? Probation? All of the above?

Contrasted with the above is the Rite Inc. form. It, unlike the USPO form, is capable of some degree of precision.

The USPO form went far beyond the ambit of this Court's Order and Federal law. It was perfectly lawful for Mr. Tucker to refuse to sign it.

### B.    Unlawful Questioning

When the Court first imposed the drug testing condition on Mr. Tucker the Defense voiced its concern that the testing not become an opportunity to question Mr. Tucker about drug use and without the assistance of his lawyer. The Court acknowledged the concern and issued the appropriate oral directive to the USPO.

That directive has been repeatedly violated. With each allegedly "hot" urine test, Mr. Tucker has been questioned. He has been questioned outside the presence of his attorney. He has been questioned in a Federal building, in close proximity to armed guards in a situation where his detention in the face of silence was an implicit threat.

While Miranda v. Arizona, 384 U.S. 436 (1966) ***may*** not apply to the USPO, the constitutional prohibition on the use of coerced confessions does. Mr. Tucker's admissions were not given freely and voluntarily given. They cannot be used against him. This Court should not use them against him.

### III. SCIENCE AND "DILUTE"

The USPO has reported that Mr. Tucker's urine samples were often "dilute." That is apparently a USPO term of art.

The use of "dilute" in such cases refers to a lower specific gravity of a urine sample than would be expected in an average human being. In lay terms, there is more water, and less suspended solids, in the urine than would be expected.

The lower the USPO number, the less suspended solids in the sample. That is, "1" is more dilute than "6."

Any number of factors can produce a "dilute" sample. A deliberate effort to avoid accurate testing of the urine is one explanation. There are others.

Respectfully submitted this 9th day of March 2006.

> Vasquez & Weber, P.C.
> Attorneys for Michael Tucker
> S/: David R. Weber,
> 943 West 6th Ste. 132
> Anchorage, Alaska 99502
> (907) 279-9122/9123 fax
> vw.law@acsalaska.net
> Ak. Bar Assn. No. 8409083

CERTIFICATE OF SERVICE

I certify that on March 9, 2006 electronic service of a copy of this Bail Brief was provided to the Court for all counsel of record pursuant to Criminal Rule 49(b), Civil Rule 5(b)(2)(D) and Local Rules 5, 5.1(a) and 5.2(c)(2).

S/: David R. Weber

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123
VW.LAW@ACSALASKA.NET