IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) |
| JASMINE DANIELLE HOLLIMAN, SARAH ROSE NOBLE, HILARY JEANETTE PATTERSON, and **MICHAEL McGEEHAN TUCKER**, | ) Case No.: A05-099 Cr. (JWS) |
| Defendants | ) |

### TRANSCRIPT EXCERPTS FOR BAIL DECISION

COMES NOW Michael Tucker, by and through counsel David R. Weber, of the firm of Vasquez & Weber, P.C., and submits these, his Transcript Excerpts for Bail Decision.  At the last hearing on this matter the Defense asked the Court to take notice of the bail proceedings of December 28, 2005 and February 15, 2006 in this matter.  The Court directed the Defense to prepare transcripts and direct the Court's attention to the portions the Defense wished the Court to consider.  The Government was to have the opportunity to counter designate portions of the transcripts.[1]

One of the issues raised by the Defense concerns the questioning of the Defendant about drug usage and unlawful activity in conjunction with drug testing.  Mr. Liedike had difficulty recalling whether the Defense had expressed any such concerns to him.

At the December 28, 2005 bail hearing the following was said:

[1]    Counsel understands that both the Court and the Government are provided with the transcripts.  If this understanding is in error the Court and the Government are requested to so advise counsel and copies will be secured for them.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122    FACSIMILE (907) 279-9123
VW.LAW@ACSALASK.NET

1    MR. WEBER:    I'm frankly troubled by the extent of questioning of a pretrial defendant [. . .]

2    Transcript of December 28, 2005 ("Dec. Tr."), Page 10, Lines 24 – 25.

3    MR. WEBER:    I'm thinking that this is an unadvised recitation

4    of past behaviors.  [. . .]

5    Dec. Tr., Page 11. Lines 7 – 8.

6    MR. WEBER:    Your Honor, with regard to the urinalysis?

7    THE COURT:    Yes.

8    MR. WEBER:    My understanding is the Court has ordered Mr. McGeehan to take the test.  My concern is--and I don't know the answer to this--if Pretrial Services in preparatory to the test has a questionnaire for everyone taking the test such that my client might be engaging in statements that could incriminate himself.  I don't understand you to be ordering him to answer any such questions, and I'd certainly advise him not to, but I don't want get crosswise with the Court.

13    THE COURT:    I've not addressed that issue.  Let me defer to Pretrial Service.  I don't know that I've seen that report at any time soon, that form or the -- whatever you might have.

15    MR. LIEDIKE:    I'm not sure I understand, Your Honor.  We do substance-abuse testing.  If it comes back positive, we send it back for confirmation.  We do ask the individual if they have been using or not.  Either way, it's -- you know, the test itself is confirmed, and it's considered, you know, a positive.  If it comes back and it's not confirmed positive, then it's a negative.  If they discuss with us what had happened, that's on them.  They can do so or not.  There's no specific form.  We do have an admission form, if -- but that is the only form I know of, so what other --

20    THE COURT:    Admission in what sense, admitting you've done something or being --

22    MR. LIEDIKE:    Yes, Your Honor, admission of drug use, essentially, and that's voluntary if they want to -- if they sign that or not.

24    THE COURT:    All right. Mr. Weber, it appears to be voluntary.  My concern is to have a standard for the future.  As I said, if it

25

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122    FACSIMILE (907) 279-9123
VW-LAW@ACSALASKA.NET

comes up positive, so be it, but it should be going down in the future.

And I've not ordered that he is in custody, but I do want that done today. If he leaves and comes back, that's okay, but I want it done today for a standard.

MR. WEBER:    Certainly. I understand that.

THE COURT:    All right.

MR. WEBER:    I just didn't want to be refusing to answer questions when you had implicitly ordered him to answer them.

THE COURT:    Well, I --

MR. WEBER:    And you haven't, I understand.

Dec. Tr., Page 18. Line 10 – Page 20, Line 4.

From the Court's remarks it is clear that the potential inculpatory nature of drug use information was apparent:

THE COURT:    [. . .]

Because the charges are not drug related and there's no indication before me that drugs played a part--they certainly could've been a motive for somebody to commit a crime [ . . ]

Dec. Tr., Page 17. Lines 14 – 17.

At the February 15, 2006 bail hearing the following was said:

MR. WEBER:    Yes, Your Honor. With regard to the assessment, it's my experience that those often come with releases of information. I don't have a problem with a release of the treatment recommendations, but I would ask there not be a request for release of the assessment itself. One, you want Mr. Tucker to be candid with whoever is doing the assessment, and, two, it's entirely possible that he might come before this Court for sentencing, and that would not be a fair thing to use his statements in seeking treatment against him (indiscernible), I'm saying.

THE COURT:    Well, I'm not sure. If you're concerned about it going to the prosecutor, that's certainly one thing, but going to Pretrial Service --

MR. WEBER:    Well, Your Honor, if it goes to Pretrial Service, that's in the judicial branch, and it ends up in a memo, and it comes

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122    FACSIMILE (907) 279-9123
VW-LAW@ACSALASKA.NET

before the bench, and the bench is going to be the one sentencing him.

THE COURT:        Well, at some point it might come before the Court if there's a violation or if it affects some sentence, either bail or sentence, but it wouldn't just necessarily come before me.

Before we get any further, Mr. Liedike, what's your experience in how this works? How much do they -- information do they normally share about the basis for their assessment, or do they just tell you what -- you know, what their bottom-line finding is and their treatment recommendation?

MR. LIEDIKE:        From my understanding, they do provide somewhat of a detailed summary of their assessments, which then relates into what they are recommending and why. Essentially, that would then just get placed in his file. We'd then draw up the paperwork to go along with whatever recommendations that they -- whatever treatment they recommend.

THE COURT:        In the past, has this information gone to the files in cases such as felony cases, for example?

MR. LIEDIKE:        Yeah, the information, it goes into our Pretrial file, which then, if I'm understanding the concern of the defense, is that yeah, whoever is assigned to the presentence report, if it gets to that point, does have access to that information, which oftentimes it does get placed in the presentence report.

THE COURT:        All right. Well, I don't see any basis to make an exception here. The Court, of course, is able to consider lawfully the information before it in making its determinations, so I'm not going to change the rules. If he doesn't want to participate, for some reason or not, we'll look at some alternative. I mean, you can confer with him and see, but the facts are the facts, whatever they are, whatever condition he is.

MR. WEBER:        The choice between -

THE COURT:        It's just -- it's like any other bail information that comes before the Court. If the Court's going to try the case or rule on motions either way, it has certain information that you might say would be derogatory about the type of person, the conditions, the criminal record, whatever it might be, but those are the facts.

MR. WEBER:        In the choice between self-incrimination and freedom, he'll choose freedom.

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122        FACSIMILE (907) 279-9123
VW.LAW@ACSALASKA.NET

February 15, 2006 Transcript, Page 7, Line 24 – Page 10, Line 6.

Another issue before the Court was Mr. Tucker's consumption of alcohol.

On December 28, 2005, this Court told Mr. Tucker:

> THE COURT:     The additional conditions include refraining from excessive use of alcohol. That means not to be intoxicated.
>
> MR. TUCKER:     Okay.
>
> THE COURT:     It doesn't mean you can't have a drink and watch the ball game, but if you're intoxicated even in your own residence, it's a violation of the conditions.

Dec. Tr., Page 17. Lines 1 – 7.

Respectfully submitted this 28th day of March 2006.

Vasquez & Weber, P.C.
Attorneys for Michael Tucker
S/: David R. Weber,
943 West 6th Ste. 132
Anchorage, Alaska 99502
(907) 279-9122/9123 fax
vw.law@acsalaska.net
Ak. Bar Assn. No. 8409083

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122     FACSIMILE (907) 279-9123
VW.LAW@ACSALASKA.NET

CERTIFICATE OF SERVICE

I certify that on March 28, 2006 electronic service of a copy of this Transcript Excerpts for Bail Decision was provided to the Court for all counsel of record pursuant to Criminal Rule 49(b), Civil Rule 5(b)(2)(D) and Local Rules 5, 5.1(a) and 5.2(c)(2).

S/: David R. Weber