**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br><br>vs.<br><br>MICHAEL McGEEHAN TUCKER,<br><br>        Defendant. | **3-05-cr-00099-04-JWS-JDR**<br><br>**ORDER**<br>**REGARDING**<br>**MOTION TO REVOKE**<br>**PRETRIAL RELEASE**<br>(Detention Order)<br>(Docket No. 82) |

This cause is before the court on the government's motion to revoke the defendant's pretrial bail based on violations of conditions of bail imposed.  For reasons stated below, I grant the government's motion to revoke bail.

**Background**

Defendant Michael Tucker is named in Counts 1 and 4 of a five-count first superseding indictment charging three other defendants.  Count 1 alleges that all defendants conspired to unlawfully transport, transmit and transfer in interstate

commerce from Anchorage to other states, stolen goods, wares, merchandise, namely coins with a value of $5,000 or more, knowing the same to have been stolen in violation of 18 U.S.C. §371. Tucker is charged in Count 4 with aiding and abetting Jasmine Hollimon with unlawfully transporting, transmitting and transferring in interstate commerce from Anchorage, Alaska, to Arizona stolen goods, namely coins of a value of $5,000 or more, knowing the same to have been stolen in violation of 18 U.S.C. §2314 and 18 U.S.C. §2.

Tucker was released on pretrial bail on an unsecured appearance bond and conditions of release that included an order that the defendant refrain from excessive use of alcohol (Condition 7(o)) and an order to refrain from use or unlawful possession of a narcotic drug or other controlled substance defined in 21 U.S.C. §802, unless prescribed by a licensed medical practitioner (Condition 7(p)). The order of release required Tucker to submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. (Condition 7(q)). The latter condition further provided that pretrial service may use such methods with random frequency to include urine testing, a remote alcohol testing system, and any form of prohibited substance screening or testing. *Id. See*, docket entry 47. Trial is set to commence March 22, 2006.

By memorandum dated March 3, 2006, U.S. Pretrial Service Officer Chris Liedike notified Assistant U.S. Attorney Retta-Rae Randall that Tucker had violated his pretrial release.  Pretrial services recommended that a warrant of arrest be issued for Tucker and that he be ordered to reside at the Cordova Center with work release pending the outcome of the case.  The prosecutor requested an arrest warrant.

Tucker was arrested and appeared before the magistrate judge on March 10, 2006, for a detention hearing.  Tucker denied the allegations and an evidentiary hearing was scheduled.  On March 9, 2006, Tucker through his court-appointed attorney filed a pleading styled "Bail Briefing," docket entry 93.  Chris Liedike, pretrial service officer, and Rick White testified at the hearing.

Pretrial service officer Liedike sent a memorandum captioned "Third Supplemental Pretrial Release Violation" to AUSA Randall with a copy to the court. *See*, plaintiff's exhibit 1 to the evidentiary hearing. The government alleges in this memorandum that Tucker violated his pretrial release order by using cocaine or opiates on December 30, 2005, January 3, 2006, January 9, 2006, and February 28, 2006.  The government alleges that Tucker failed to report to pretrial services for urinalysis testing on January 27, 2006, February 6, 2006, February 8, 2006, February 21, 2006, and February 27, 2006 and that he failed to appear to submit a urine sample on various dates as directed.  The government further alleges that

Tucker did not keep the pretrial service office apprised of his residence and that he left the rescue mission on or about January 23, 2006, without advising his pretrial service officer, Chris Liedike, of the change in his residence.

**Factual Findings**

U.S. Pretrial Service Officer Chris Liedike did an initial interview of Tucker in preparation of a pretrial services report which is provided to the court for consideration of bail. A copy of the report was provided to the defendant as well as the government. The interview took place at Tucker's residence and Officer Liedike was accompanied by pretrial service officer Paula McCormick. The officers carried concealed weapons but no reference or display of weapons was made during the interview. Tucker was not told he was in custody, nor was he threatened with custody if he did not answer the officer's questions.

Officer Liedike inquired of Tucker about his present and past usage of drugs. Tucker did not say that he did not want to answer the questions, nor did he ask to have the questioning cease or for the officers to leave his residence. Tucker provided information indicating past use of several controlled substances which caused Officer Liedike to have concerns about his use of Oxycontin and cocaine. Tr. of Mar. 10, 2006, hearing, pp. 13-14. Officer Liedike observed what appeared be a pipe used for smoking cocaine and/or methamphetamine at Tucker's residence during a home visit. *Id.* at 15. Tucker indicated that it belonged to his roommate.

Officer Liedike prepared a pretrial service report that recommended drug testing for Tucker.  Bail was initially set at the December 28, 2005, hearing. Tucker was released on a $2500 unsecured appearance bond with conditions requiring him to report once a week to pretrial services office and as directed by that office; to obtain no passport; not to leave Alaska without the prior consent of the court; to avoid all contact directly or indirectly with Jasmine Hollimon; to refrain from possessing a firearm, destructive device or other dangerous weapon; to refrain from excessive use of alcohol; to refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. §802, unless prescribed by a licensed medical practitioner; and to submit to any method of testing required by pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance.  The order allowed such methods to be used with random frequency including urine testing and or any form of prohibited substance screening or testing.  After that hearing Officer Liedike discussed the conditions of release with Tucker in the presence of his attorney.  Tucker signed a form indicating that he understood those conditions.  Tucker's attorney, David Weber, did not ask pretrial service not to contact Mr. Tucker.  The pretrial service officer took a urine sample from Tucker on December 28.  Tucker told Officer Liedike that the sample might test positive.

On February 10, 2006, Tucker was sent home from work by Arby's management because he smelled like alcohol.  At the time of Tucker's arrest, he was not employed.  On February 15, Tucker would not talk to his pretrial service officer about vocational prospects.

On February 14, 2006, the government filed a motion for bail review on shortened time based on concerns raised by the pretrial service office as to defendant's compliance with his bail conditions.  The government requested that Tucker be required to complete an alcohol and substance abuse assessment, and to follow any treatment recommendations.  Docket entry 76.  A bail review hearing was scheduled for February 15, 2006.  Docket entry 77.  On February 15 Tucker was ordered to submit to an alcohol and substance abuse assessment and to follow any treatment recommendations.  *See*, minutes of hearing, docket entry 78.

On March 3, 2006, the government filed an expedited motion for an arrest warrant for violations of release conditions.  Docket entry 81.  Attached to the motion was a memorandum from the U.S. pretrial service officer dated March 3, 2006 (2d supplemental pretrial release violation).  The taking of urine samples was discussed with Tucker in the presence of his attorney.  Mr. Weber objected to Tucker signing the paperwork but not to the taking of urine samples.

On January 31, 2006, Officer Liedike contacted Tucker at his new residence.  Tucker submitted a dilute sample which led to a discussion about

whether Tucker was diabetic.  Tucker was told that he might want to be tested for diabetes.  Tucker indicated that he was willing to pursue that medical concern.  The officer gave Tucker a ride to a place where he could be tested for diabetes.  Tucker later called back to inform the pretrial service officer that the doctor said he was not diabetic.

On February 3, 2006, Tucker field tested positive for THC but the laboratory result was negative.  On February 28, Tucker left a message for pretrial service saying he lacked money for transportation to come to pretrial services office.  Tr. Mar. 10, 2006, p. 51.  Officer Liedike visited Tucker's residence unannounced.  After he arrived, Tucker came outside.  Liedike asked if they could enter the residence which was a new place of residence for Tucker not previously visited by pretrial service.  Tucker indicated they could.  Pretrial service confirmed that Tucker resided there.  They asked Tucker for a urine sample, but he could not provide one.  They moved into the community kitchen in the meantime, talking for about twenty minutes.  No one else came into the kitchen during that time.

Pretrial service obtained a urine sample that day which field tested positive for THC.  The laboratory results are still pending.  Tucker was informed of the positive field test and he stated that he had "messed up," that he had smoke marijuana a few days earlier.  Tucker objects to his admission being used in the bail

proceeding on the grounds that it violated his Fifth Amendment.  Tucker also stated

that he had taken beverages in an attempt to dilute his urine samples.

### Legality of Random Drug Testing

Relying upon United States v. Scott, 424 F.3d 888 (9th Cir. 2005),

Tucker argues that this court erred when it ordered drug testing as a condition of his

pretrial release.[1]  In short, he argues that the requirement of random drug testing is

illegal because it conditioned Tucker's release on a bail condition specifically

condemned as violative of the Fourth Amendment in Scott, 424 F.3d at 891.

Scott had been arrested for drug possession crimes and released by the

State court on his own recognizance.  A condition of his release was his consent to

random drug testing and to having his home searched for drugs by "any peace

officer any time [,] day or night [,] without a warrant."

Based on an informer's tip that lacked probable cause, State officers

went to Scott's house and administered a urine test.  When Scott tested positive for

methamphetamine the officers arrested him and searched his house.  The search

disclosed a sawed-off shotgun which led to a federal indictment for unlawfully

possessing an unregistered shotgun.  The federal district court granted Scott's

motion to suppress the shotgun and statements he had made to the officers

---

[1] A Petition for Rehearing and Rehearing en Banc is pending in Scott.

concerning it on grounds that the officers lacked probable cause to justify the warrantless entry and search.

The Ninth Circuit in <u>Scott</u> addressed the federal government's interlocutory appeal pursuant to 18 U.S.C. §3731. The Ninth Circuit panel first considered whether the drug testing and search of Scott's house were valid although Scott consented to them as a condition of his release. The court began with the premise that one who is released on pretrial bail does not lose his Fourth Amendment right to be free from unreasonable seizures. 424 F.3d at 893, citing <u>Cruz v. Kauai County</u>, 279 F.3d 1064, 1068 (9th Cir. 2002). The Ninth Circuit observed that a Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable. 424 F.3d at 891. The court was unable to conclude that the search regime to which Scott was subjected was necessary to ensure his appearance at trial. *Id.* At 896. The opinion discussed Scott's privacy interest in his home and ruled that Scott's assent to his release conditions did not, by itself, make an otherwise unreasonable search reasonable. *Id.* The Ninth Circuit opinion states that "because the government has failed to make the requisite special needs showing [to justify a search based on less than probable cause], the police needed probable cause to test Scott for drugs." This statement must be viewed in the context of the facts and holding of the case. Scott was tested for drugs after the probation officer had entered his home without

a warrant and without probable cause for doing so.  Indeed, the Ninth Circuit found that probable cause to search Scott's house did not exist until the drug test came back positive.

In his dissent, Circuit Judge Bybee opined that the majority's decision [effectively] invalidates the United States government's pretrial release condition unless federal officers can first demonstrate probable cause to support the drug test. 424 F.3d at 912.  That may be a logical extension of the majority's opinion in Scott, but it is not Scott's holding.  Scott was on pretrial release granted by a Nevada State court, and the compliance check by the probation officer was conducted at Scott's residence after the officer received information that Scott had in his possession a 9 mm handgun and a sawed-off shotgun, as well a paraphernalia specific to the manufacture of methamphetamine.  The standard pretrial release condition requiring a defendant to submit to any method of testing required by a pretrial services office (such as stated on Form AO 199B) was not before the court.

Tucker was granted bail release conditioned upon his compliance with certain conditions imposed by the court.  By signing the order setting conditions of release Tucker acknowledged that he understood those conditions and agreed to abide by them.  He voiced no objections to the conditions when they were imposed. Unlike the pretrial conditions imposed upon Scott, Tucker was not required to submit

to a search of himself, his residence or his vehicle by any peace officer at anytime without a warrant.

The Scott court analyzed the propriety of the search under both the "special needs" exception to the Fourth Amendment and the more general "totality of the circumstances" Fourth Amendment reasonableness test. Scott held that the government failed to make the special needs showing under the rationales traditionally asserted for pretrial searches, such as protecting the community and ensuring the defendant's appearance. The Ninth Circuit opinion also held that probable cause did not justify the search under the totality of the circumstances.

I do not read Scott to require any change to drug testing imposed pursuant to 18 U.S.C. §§3142(c)(1)(B)(ix) and (x). In Scott, it was the manner of seeking a compliance check that violated the Fourth Amendment. The appellate court found that the officers had no legal right to enter Scott's residence and thus to ask him to submit to a drug test. I believe that a history of drug and alcohol abuse enhances the risks of non-appearance and danger to the community, and that drug testing is an appropriate condition of bail release to diminish these risks. See, Report of the Proceedings of the Judicial Conference, Sep. 2004 at 14.

Moreover, Scott is still before the Ninth Circuit. On February 1, 2006, appellee Raymond Lee Scott filed a response opposing a petition for en banc rehearing. As of the date of this order, Westlaw does not show that the court has

ruled upon any petition for *en banc* rehearing or that the time for filing a petition for *certiorari* to the U.S. Supreme Court has expired.

I conclude that it was not a violation of the Fourth Amendment for this court to impose as a condition of Tucker's release that he submit to any method of testing required by the pretrial services office for determining whether he is using a prohibited substance. The Fourth Amendment prohibits <u>unreasonable</u> searches and seizures. There is no constitutional right to be released on bail. It is unlawful to possess or use controlled substances without a prescription from a licensed medical practitioner. Drug testing helps ensure that the defendant is physically and mentally able to understand the proceedings and participate in his defense. Drug testing protects the community against drug trafficking and helps ensure that the defendant will report for trial and other proceedings as directed by the court. The condition of drug testing meets the Fourth Amendment's "reasonableness" hallmark and is compatible with that amendment's standard of balancing the accused's privacy interests against the legitimate interest of the government in setting bail for an indicted person in light of the totality of the circumstances. The district court has broad discretion under 18 U.S.C. §3142(c)(1)(B) to set conditions for pretrial release that are reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community. Because it was reasonable to require random drug testing as a condition of release by having the

defendant report periodically to the pretrial office for testing, it was not necessary for the pretrial services officer to demonstrate probable cause for drug testing of urine at the pretrial services office.

Tucker's order for release allowed drug testing to be used with random frequency including urine testing. Unlike Scott, it did not authorize drug testing any time, day or night, or a search of his house for drugs or a search of his person by a peace officer, day or night, without a warrant. Tucker was directed by pretrial services officer Liedike to report to the U.S. Probation Office to produce a urine sample for drug testing. In Scott, the search at issue was conducted in the defendant's home, a location enjoying special protection by the Fourth Amendment. Drug testing itself of pretrial detainees is not prohibited by Scott.

The presumption of innocence does not alter the balancing process for bail. That presumption addresses the issue of guilt at trial. Pretrial release is not precluded for someone who may be proved guilty at trial. Nor is pretrial detention unavailable for an accused who may be found not guilty at trial.

The process of setting bail does not include a waiver solicitation in which the defendant is asked to forego any constitutional right at the risk of being detained if he does not provide a waiver. The bail statute requires the court to set the least restrictive conditions for the defendant's release. When there is a legitimate concern about future drug abuse by the defendant while awaiting trial, the

court may require drug testing as a means of monitoring a condition that the defendant refrain from possessing or illegally using drugs or controlled substances. Should the defendant decline to submit to drug testing, the court may determine that there are no conditions that will reasonably assure the defendant's appearances and protect the community.

### Failure to Sign Release Form

On February 15, 2006, Tucker appeared before the court regarding violations of pretrial release conditions.  He was ordered to complete a drug/alcohol assessment and follow any treatment recommendations resulting from the assessment.  Officer Liedike contacted Rite, Inc. and scheduled a drug/alcohol assessment for Tucker for February 21, 2006.  On February 21, Tucker appeared at the U.S. Probation/Pretrial Services Office to submit a urine sample and informed Officer Liedike that he did not know he had an assessment at Rite, Inc.  The assessment was rescheduled to February 28, 2006.

On February 28, Officer Liedike received a telephone call from Rite, Inc. informing him that Tucker would not sign a release of information form. Tucker argues that the logic of <u>Scott</u> supports his Fifth Amendment objection to signing a release permitting Rite, Inc. to provide information to the pretrial service officer so that his attendance and compliance with the prohibition against prohibited use of drugs could be monitored.  Officer Liedike intended to use information obtained from

Rite, Inc., to consider any treatment Tucker might need. Officer Liedike requested the counselor at Rite, Inc. to continue with the assessment.

The form presented to Tucker by Rite, Inc., was form Prob 11B (rev. 5/03). The form when executed authorized Rite, Inc. to release confidential information in its records, possession, or knowledge to the United States Probation Office for the District of Alaska. The information to be released included date of entrance to the program; attendance records, urine testing results, type, frequency and effectiveness of therapy; general adjustment to program rules; type and dosage of medication; response to treatment; test results (psychological, vocational, etc.); and date of and reason for withdrawal from the program; and prognosis. It authorized release of information in connection with Tucker's participation in the program which had been made a condition of his pretrial release. It provided that the probation office could use the information only in connection with its official duties but allowed disclosure to the United States Parole Commission. *See*, defendant's exhibit A which is a copy of the form.

When Tucker declined to sign the release form, Liedike asked Rite, Inc., if they were able to do the assessment without the release. They indicated they could. Liedike asked that they go ahead and do it. Tucker's refusal to sign the form is referenced in the Third Supplemental Pretrial Release Violation memorandum prepared by Officer Liedike as grounds that Tucker's bail be revoked. The release

form appears to be generic to both pretrial release and post-judgment drug abuse programs.  Because the form appears overly broad for purposes of pretrial release, I decline to consider the defendant's refusal to sign the form as a basis for revoking pretrial bail.  The court declines to order Mr. Tucker to sign the release form represented by defendant's exhibit A.  Therefore , Tucker's request for appropriate safeguards against unauthorized disclosure of any drug treatment records generated by Rite, Inc. merits no further discussion in this order.  Mr. Liedike never received the results of the drug and alcohol assessment.

The government should use a release form that is tailored to pretrial monitoring if the government maintains that a pretrial detainee should undergo alcohol/substance abuse assessment.  I reject Tucker's claim that the provider, Rite, Inc., providing information to pretrial service about the defendant's attendance and compliance with the assessment would violate the Fifth Amendment.

### Tucker's Statements to Officer Liedike

Tucker objects to the court using any of his statements admitting to drug abuse made to Officer Liedike outside the presence of his attorney.   While acknowledging that Miranda v. Arizona, 384 U.S. 436 (1966) "may not apply," Tucker characterizes his incriminating statements or admissions concerning drug use as not freely and voluntarily given.  Tucker was not in custody when the drug testing for compliance with the pretrial order was undertaken at the pretrial services office.  Nor

was he in custody when Officer Liedike asked him about the positive UAs. <u>Miranda</u> is inapplicable and does not require that a pretrial detainee be offered the presence of counsel before he is questioned about a "hot" field test for a controlled substance. The motion before the court is one to revoke bail; the government is not claiming that it has the right to introduce Tucker's admissions at trial.  It is premature to consider whether or not the government could use those admissions at sentencing should the proceedings reach that stage.  The evidence indicates that Tucker freely conversed with his pretrial officer and told him that he had smoked marijuana. *See*, Tr. Of March 10, 2006, bail hearing, pp. 36, 55.

The court has considered whether its oral directive to Officer Liedike at the December 28, 2005  proceeding limited that officer's use of Tucker's admissions for purposes of litigating whether Tucker has complied with the conditions of his release on bail.  Mr. Weber's objection was to the defendant having to answer any "questionnaire" that would be presented to him or admitting to the use of drugs should any UA turn up positive.  Officer Liedike advised the court that these questions are voluntary.  Mr. Weber stated he would recommend to his client that these not be answered.  The court never ordered Tucker to answer questions admitting drug use.  Tr. of arraignment, December 28, 2005, p. 20.  Nor did the court direct the pretrial service officer not to discuss drug use with Tucker.  Mr. Tucker

agreed to participate in the substance abuse assessment imposed at the February 15, 2006, bail review hearing.  Tr. of Feb. 15, 2006, bail review hearing, p. 5.

On December 28 when Tucker's first urine sample tested positive for THC, cocaine and opiates, the officer did not ask Tucker any questions about the last time he had used drugs, nor did he ask such questions on January 3, 2006, when Tucker tested positive for THC and cocaine.  Officer Liedike usually advises a pretrial detainee before asking questions that he does not have to speak with him. He believes he so advised Tucker, but he did not recall whether he had done so on this particular occasion.  Tr. of Mar. 10, 2006, p. 94.

Tucker argues that his statements were not made voluntarily because of the use to which they could be put.  Any potential use of his statements for trial is not presently before the court.  Tucker has cited no case authority requiring the government to advise him of its prospective or intended use of his statements as a prerequisite to finding that those statements were made voluntarily.  I disagree with Tucker that <u>Scott</u>, *supra*, requires a pretrial service officer to administer <u>Miranda</u> warnings before asking a pretrial detainee questions about compliance with conditions of release in the pretrial service office.

### Effect of Dilute Urine Test Samples

At the evidentiary hearing, Officer Liedike testified that Tucker's urine samples were occasionally "dilute," referring to a low specific gravity of a urine

sample that prevented the urine from being meaningfully tested for the presence of a controlled substance. The standard order setting conditions of release, form AO 199A (rev. 5/99), Condition 7(q) required Tucker to submit to any method of testing required by a pretrial services officer for determining whether he is using a prohibited substance. The form order further provided that such method may include urine testing. The form does not address the consequences of a detainee producing a dilute sample. In his testimony, Officer Liedike described several occasions wherein Tucker presented a "dilute" sample which caused the pretrial service office to request another sample from Tucker for testing. The government's motion for issuance of an arrest warrant for violations of release conditions, docket entry 81, argues that Tucker failed to comply with the conditions of his release by providing urine samples which were dilute. *Id.*, p.2. The government argued that Tucker continues to dilute his urine samples implying that it was purposely done to avoid drug assessment.

On one occasion, Tucker stated to Officer Liedike that his sample was dilute because he was taking medication for constipation. He was told to come back again at 1:30 p.m. Tucker produced another dilute sample. He was then told to come back the next day, February 14. Tucker told his pretrial service officer that he could not afford to come in and suggested that the government pay for his constipation pills.

Tucker acknowledges that a deliberate effort to avoid accurate testing of urine is one explanation of a "dilute" sample.  He argues that there are other explanations, such as diabetes.

The urine samples from Tucker were taken by Rick White, an automated support specialist and drug detection specialist with the U.S. Probation/Pretrial Service Office.  Mr. White is aware of the standards established by the Substance Abuse and Mental Health Services Administration of the Department of Health and Human Services for determining the validity of urine specimens collected under the mandatory guidelines for federal workplace drug testing programs.  Section 1.2 of subpart A of those regulations published in 69 Fed. Reg. 71 (Dep't of HHS Apr. 13, 2004) defines "dilute specimen" as "a urine specimen with creatinine and specific gravity values that are lower than expected for human urine.  *See*, copy of Federal Register for April 13, 2004, exhibit E to evidentiary hearing.  Under those guidelines, any sample below 1.020 is considered too dilute for a valid testing.  According to Mr. White, the pretrial service office uses an even lower standard for what is considered "dilute."  In the testing done by pretrial service office the sample is not considered dilute if it is above 1.010 specific gravity.  Tucker admitted to Liedike that he was attempting to dilute his urine by drinking beverages.  I find that pretrial service had reasonable cause to ask Tucker to provide another urine sample(s) when he produced a "dilute" specimen.  Not all of Tucker's dilute

samples may be attributed to Tucker's resistance to drug testing, but the evidence does lead me to conclude that Tucker has not been fully compliant with the order requiring him to submit to drug testing.

### Tucker's Failure to Report for Drug Testing

When Tucker was requested to report for drug testing he could come in any time between the hours of 8 a.m. to 5 p.m., except for the lunch hour 12 noon to 1 p.m. when the office is closed.  He failed to show up on February 8, 2006.  Tr. Mar. 10, 2006, p. 41.  Tucker now argues that he did not have bus fare to come to the federal building.  Accepting this argument at face value, Tucker has no basis for objecting to the pretrial service officers visiting at his residence.

### Conclusion

1.  The evidence does not support a finding that Tucker has been drinking alcohol to excess in violation of his conditions of release.

2.  In assessing the evidence I conclude that Tucker has tested positive for THC on at least three occasions after his initial testing when bail was first imposed.  In my judgment this is sufficient to revoke the defendant's bail without considering whether Tucker intentionally produced dilute samples, whether he has admitted using drugs, and whether or not he was justified in declining to sign the release form.  I find no conditions of release that will reasonably assure the defendant' appearances as ordered by the court and that he will not constitute a

danger to the community.  Accordingly, IT IS ORDERED that the defendant, Michael

Tucker remain in custody prior to trial pending further order of the court.

DATED this ___28th___ day of March, 2006, at Anchorage, Alaska.


 /s/ John D. Roberts_____
JOHN D. ROBERTS
United States Magistrate Judge