DEBORAH M. SMITH
Acting United States Attorney

RETTA-RAE RANDALL
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: rettarae.randall@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL McGEEHAN TUCKER, ) <br> ) <br> Defendant. ) <br> ) | No. 3:05-CR-099-04-JWS <br><br> **TRIAL BRIEF OF THE** <br> **UNITED STATES** |

I.   INTRODUCTION

The defendant is charged with one count of Conspiracy in violation of 18

U.S.C. § 371and one count of aiding and abetting the Interstate Transportation of

Stolen Property in violation of 18 U.S.C. § § 2314 and 2. The defendant was charged with three co-defendants; their cases have been resolved. The trial of the above matter is set to begin on May 8, 2006 in Anchorage. There are no motions pending before the court. The government anticipates that it should be able to present its case in 2 days.

II.     STATEMENT OF THE CASE

Toni Goodrich is partial owner of Oxford Assaying and Refining (OAR) at 3406 Arctic Blvd. She has worked there since 1997, but did not buy into the business until 2003. In 2003 she instituted a computerized inventory system at the company. The business is engaged in refining and selling precious metals, including the sale of coins; ninety percent of the business involves the sale of gold, 1% platinum and the rest is silver. A significant portion of the business consists of the buying and selling of bullion, including one ounce Gold Eagles, Krugerrands, and platinum Eagles.

In January 2005, Goodrich received a telephone call from an informant, a friend of both Goodrich and co-defendant, Jasmine Hollimon. The informant stated that Hollimon was stealing gold from OAR, and having friend/accomplices sell them back to the company. The friend/accomplice got a percentage of the sale price with the bulk returned to Hollimon. The informant gave Goodrich a list of names of individuals Hollimon had used to sell coins back to OAR. OAR confirmed the writing

of business checks to these individuals when they came into the store to sell the gold and platinum coins; the total amount paid for coins purchased from known accomplices in Alaska was $117,510.30.

Hollimon worked for OAR from November 1, 2000, through January 27, 2005, when she was terminated. She was laid off from employment at OAR between April, 2003, and January, 2004. Hollimon has entered guilty pleas to conspiracy and interstate transportation of stolen property and has agreed to cooperate with the government.

Between July 5, 2002 and March 24, 2004, Hollimon sent stolen coins through the mail to Sarah Noble in Seattle, WA. Noble has been interviewed by the FBI; at first she minimized her involvement but has since admitted the amount of coins stolen. She has also admitted that she knew they had been stolen by Hollimon when Noble received them. She sold the coins for a total of $62,084.75, and Hollimon received $42,070. Noble has entered a guilty plea to interstate transportation of stolen property and has agreed to cooperate with the government.

Holliman also sent coins through United Parcel Service to Hilary Pattison in Utah. Rust's Coins in Provo, Utah, provided information about checks written to purchase coins from Pattison. Close to the date of each sale, a deposit was made into a Wells Fargo account of Hollimon. The total value of coins sold by Pattison was

$41,556.45; Holliman's account received $32,250. Pattison has been interviewed by the FBI, corroborated the sale of the coins, and knew Hollimon had stolen them. Pattison has entered a guilty plea to interstate transportation of stolen property and has agreed to cooperate with the government.

Michael Tucker also sold coins stolen from OAR for Hollimon. He initially sold stolen coins back to OAR in Alaska on July 22, 2004, He received a check for $2,695.00 from OAR who recorded Tucker's Alaska Driver's License number, and address and telephone number at the time of the sale. He and Hollimon used the money to buy oxycontin. Tucker was a source of oxycontin for Hollimon; Pattison first met Tucker and knew of his involvement with the stolen coins when she accompanied Hollimon to purchase oxycontin from him.

On August 11, 2004, Tucker sold coins stolen from OAR in Phoenix, AZ , at American Precious Metals, Inc., and received a check for $3,553.00. He was remembered by the store clerk because Tucker could not cash the check at a bank as he had only one piece of identification and two were required; he returned to American Precious Metals and asked for the cash instead. American Precious Metals retained the voided check. Tucker sold approximately $13,248.00 worth of stolen coins for Hollimon in Arizona in July and August, 2004; after each sale he deposited a portion of the proceeds received from the sale into the Wells Fargo Bank account

of Hollimon. Tucker kept the money from selling the last shipment of stolen coins sent to him by Hollimon and paid her nothing; their relationship then ended.

III. <u>EVIDENCE</u>

    A.    Witnesses

The United States anticipates calling approximately 8 witnesses. Testimony will be provided by law enforcement personnel who investigated the case, by one of the owners of OAR, by eyewitnesses to the defendant's conduct and/or statements, by the defendant's co-conspirators whose plea agreements have been or will be disclosed to the defendant, and by witnesses necessary to authenticate exhibits, admit evidence and establish the foundation for business records and bank records.

    B.    Documents

The government will introduce into evidence business records and bank records.

IV. <u>EVIDENTIARY ISSUES</u>

    A.    <u>Conspiracy</u>  (Count 1 - 18 U.S.C. §371)

        1.    The Elements

The defendant is charged with one count of conspiracy in violation of 18 U.S.C. § 37l.

Title 18, United States Code, Section 371 provides, in pertinent part:

> If two or more persons conspire ... to commit any offense against the United States, ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than [$250,000] or imprisoned not more than five years, or both.

There are three elements of proof: (1) an agreement with one other person to commit the object crime; (2) knowledge of the unlawful purpose of the agreement and willful joinder in the illegal plan, and (3) proof of an overt act in furtherance of the conspiracy.

      a.    <u>Agreement</u>

A conspiracy is a combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. Thus, a conspiracy is a kind of partnership in criminal purposes in which each member becomes the agent of every other member. The gist of the offense is a combination or agreement to violate or disregard the law. <u>Pereira v. United States</u>, 347 U.S. 1, 11 (1954). The agreement between the co-conspirators need not be express or formal, but may be inferred by the defendants' conduct. See <u>Direct Sales v. United States</u>, 319 U.S. 703, 714 (1943).

In order to establish that the conspiracy existed and was willfully formed, as required by the first element of the offense, the evidence must show that the conspirators, either expressly or tacitly, came to a mutual understanding to try to

accomplish a common and unlawful plan. Ordinarily, only the results of a conspiracy, rather than the agreement itself, are observable. The existence of the conspiracy need not be proved by direct evidence but may be inferred from all of the facts and circumstances of the case. United States v. Vergara, 687 F.2d 57, 61 (5th Cir. 1982). A common purpose and plan may be inferred from "a development and collocation of circumstances." Glasser v. United States, 315 U.S. 60, 80 (1942). See United States v. Morado, 454 F.2d 167, 174 (5th Cir.), cert. denied, 406 U.S. 917 (1972). Thus, the United States may rely upon circumstantial evidence of a tacit or mutual understanding underlying the actions of the defendants to prove the existence of the agreement. Traditionally, courts look to the conduct of the alleged conspirators to find proof of the agreement. See Morado, 454 F.2d at 174.

In this case, the United States will prove that Michael Tucker, Jasmine Hollimon and others conspired to sell coins stolen from OAR to get money to buy oxycontin.

    b.  <u>Knowledge of Objects</u>

The evidence must also show that the defendant knowingly and willfully participated in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy. To participate knowingly and willfully means to participate voluntarily and with the specific intent to do some act which the law

forbids. See United States v. Feola, 420 U.S. 671, 686-687 (1975) (intent for conspiracy is same as criminal intent required for underlying offense). If a defendant, with understanding of the unlawful character of a plan, intentionally encouraged, advised, or assisted for the purpose of furthering the undertaking or scheme, he thereby became a knowing and willful participant and co-conspirator. Circumstantial evidence of the defendant's knowledge and understanding of the plan is sufficient to prove this element. United States v. Boone, 951 F.2d 1526, 1543 (9th Cir. 1991).

Conversations between co-conspirators will establish that Tucker knew the unlawful character of what he was doing. In addition, abundant circumstantial evidence will be introduced in this regard.

        c.        Overt Act

The third element, required only for proof of the 18 U.S.C. § 371 conspiracy, requires proof that one or more of the co-conspirators knowingly committed one or more of the overt acts alleged in the indictment in furtherance of the conspiracy. It is not necessary that the conspirators succeed in accomplishing their purpose and, in fact, they may have failed in so doing. United States v. Cuni, 689 F.2d 1353, 1356 (11th Cir. 1982). In addition, the United States is not limited to proving the overt acts alleged in the Indictment but can show any act of the conspirators occurring during

the life of the conspiracy for the purpose of proving it. Reese v. United States, 353 F.2d 732, 734 (5th Cir. 1965). The overt act need not be criminal in nature if considered separately and apart from the conspiracy. Direct Sales, 319 U.S. at 714.

The conspiracy charged in the First Superseding Indictment lists several overt acts which were committed by the defendant as well as his co-conspirators during the course of the conspiracy. The evidence will show that each of the overt acts specified was knowingly committed by at least one of the co-conspirators in order to accomplish their illicit purpose to sell stolen coins and obtain oxycontin.

2.   Statements and acts of co-conspirators

In addition, statements of each defendant may also be admitted against other defendants as proof of the conspiracy and their involvement in it. The admissibility of the statements of a co-conspirator at trial is governed by Rule 801(d)(2)(E) of the Federal Rules of Evidence, which provides for the admission of a statement by a co-conspirator made during the course, and in furtherance of, the conspiracy. Such statements are not hearsay.

Statements demonstrating that a conspiratorial agreement existed between the defendant and a co-conspirator are admissible as verbal acts and are not hearsay. United States v. Lim, 984 F.2d 331 (9th Cir. 1993). The admissibility of such statements in the Ninth Circuit is well settled. United States v. Eubanks, 591 F.2d 513

(9th Cir. 1979); United States v. Snow, 521 F.2d 730 (9th Cir. 1975); United States v. Fleishman, 684 F.2d 1329 (9th Cir. 1982). The statements can be admitted when (1) the declaration was in furtherance of the conspiracy; (2) it was made during the pendency of the conspiracy; and (3) there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it. Eubanks, supra, at 519; United States v. Sears, 663 F.2d 896, 905 (9th Cir. 1981); United States v. Mason, 658 F.2d 1263, 1269 (9th Cir. 1981). Furthermore, the declaration of one conspirator may be used against another co-conspirator who was not present when the declaration was made. Dutton v. Evans, 400 U.S. 74, 81 (1970); Lutwak v. United States, 344 U.S. 604, 617 (1953); United States v. Salazar, 405 F.2d 74 (9th Cir. 1968). Additionally, statements by a defendant, where the defendant, either expressly or impliedly, connects himself with a conspiracy, provide independent evidence of defendant's connection with the conspiracy to admit statements of co-conspirators under Rule 801(d)(2)(e). United States v. Castaneda, 16 F.3d 1504 (9th Cir. 1994).

     The United States Supreme Court, in Bourjaily v. United States, 483 U.S. 171 (1987), was faced squarely with the issue of co-conspirator statements being offered against a defendant who was not present when the statement was made. In approving both the district court's and the Sixth Circuit's admission of such evidence, the Supreme Court held that a co-conspirator's statement is "probative of the existence of

a conspiracy and the participation of both the defendant and the declarant in the conspiracy." Id. at 180. The evidentiary standard of proof required to show a conspiracy is a "preponderance of the evidence." The same standard is used to determine whether the statement was made during the course and in furtherance of that conspiracy. Id. at 175. The district court may consider "any evidence it wishes, unhindered by considerations of admissibility" in determining the admissibility of co-conspirator statements. This would include the statements themselves. Id. See also United States v. Schmit, 881 F.2d 608 (9th Cir. 1989).

The courts do not require that all evidence of the conspiracy, or all evidence of the defendant's participation, be first introduced into evidence before the extrajudicial statement can be presented to the jury. "This may be introduced later on during the trial, but must be introduced before the trier of fact . . . acts on the evidence." United States v. Smith, 519 F.2d 516 (9th Cir. 1975). A trial judge may allow statements of a non-testifying co-conspirator to be presented before making a finding that a conspiracy did exist and that the statements were made in connection with it. United States v. Fragoso, 978 F.2d 896 (5th Cir. 1992).

This means the Court may allow the government to introduce co-conspirator statements prior to the laying of the entire foundation for the conspiracy, since the conversations themselves are foundational for this purpose, and additional proof,

presented in an orderly fashion throughout the trial, will provide the additional foundation required by the Ninth Circuit. As the Supreme Court said in Bourjaily, supra, "[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in culmination prove it. The sum of an evidentiary presentation may well be greater than its consistent parts." 483 U.S. at 179-80.

Statements "in furtherance of the conspiracy" are defined in many Ninth Circuit cases. These cases broadly encompass statements that "further the common objectives of the conspiracy," or are expressions of future intent. Eubanks, supra, at 520. Statements made to "induce enlistment or further participation in the group's activities" or "to reassure members of a conspiracy's continued existence" or "to allay a co-conspirator's fears" are also in furtherance of a conspiracy. United States v. Yarbrough, 852 F.2d 1522, 1535 (9th Cir. 1988). "Most importantly, statements made to keep co-conspirators abreast of ongoing conspiracy's activities satisfy the 'in furtherance of' requirement." Id. at 1536, citing United States v. Eaglin, 571 F.2d 1069, 1083 (9th Cir. 1977). Co-conspirator statements of an unindicted co-conspirator are also admissible. United States v. Knigge, 832 F.2d 1100, 1107 (9th Cir. 1987).

The United States intends to introduce co-conspirator statements in its case in chief.

    B.    <u>Stipulations</u>

The parties have not entered into any stipulations at this time.

    C.    <u>Evidence of Defendant's Prior Conduct</u>

Rule 404(b), Fed. R. Evid., permits the use of evidence of other crimes, wrongs or acts as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, subject to the relevance requirements of Rules 402 and 403. There is no evidence of other thefts by the defendant which be introduced as evidence; however, the government does intend to introduce evidence of the defendant's purchase of oxycontin for codefendant Hollimon and himself as his motive for conspiring to sell stolen coins for her in Arizona. Such evidence is not properly characterized as 404(b) evidence, but is "inextricably intertwined" with the charged offenses. <u>See</u> <u>United States v. Soliman</u>, 813 F.2d 227, 279 (9th Cir. 1987).

    D.    <u>Impeachment by Character Evidence</u>

Rule 608, Fed. R. Evid., sets out the scope of permissible impeachment by character evidence. Under Rule 608 testimony must be limited to a witness's reputation for truthfulness or untruthfulness and must refer to the witness's reputation at the time of trial. Weinstein and Berger, <u>supra</u> 608(03), pp. 608-21-22, n. 6-8. Extrinsic evidence of specific instances of conduct may not be introduced for the purpose of attacking or supporting a witnesses, credibility, but may be inquired into

on cross-examination at the discretion of the court. Fed. R. Evid. 608(b). The proper scope of impeachment is subject to standards of relevance under Rule 403. See e.g., United States v. Yarns, 811 F.2d 454, 455-6 (8th Cir. 1987) [court refused to permit defendant to impeach immunized co-defendant by asking questions concerning earlier illegal activity stating that the "defendant was not entitled to lead the court and jury on an excursion into past incidents that were connected to the conspiracy prosecution only by a slender thread of his tenuous impeachment theory"].

    E.    Reciprocal Discovery Issues

Pursuant to Rule 16, Fed. R. Crim. P., all parties to the instant action have been under an obligation of reciprocal discovery. The United States has provided all discoverable items to the defendant and his attorney. As of the present date, the United States has yet to receive a single document or item in discovery from the defendant. To the extent that the defendant attempts to introduce any evidence not provided to the United States pursuant to his obligations under Rule 16(b), the government will seek a preclusion order. See Taylor v. Illinois, 484 U.S. 400, 108 S. Ct. 646 (1988) [upholding constitutionality of preclusion of defense witness withheld from prosecution in violation of discovery rules].

RESPECTFULLY SUBMITTED this 1st day of May, 2006, in Anchorage, Alaska.

                DEBORAH M. SMITH
                Acting United States Attorney

                s/ Retta-Rae Randall
                Assistant U.S. Attorney
                Federal Building & U.S. Courthouse
                222 West Seventh Avenue, #9
                Anchorage, Alaska 99513-7567
                Phone: (907) 271-5071
                Fax: (907) 271-1500
                E-mail: rettarae.randall@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2006, a copy of the foregoing was served electronically on David R. Weber.

s/Retta-Rae Randall