IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,         )<br>                                                          )<br>                    Plaintiff,           )<br>                                                          )<br>         vs.                                         )<br>                                                          )<br>JASMINE DANIELLE HOLLIMAN, )<br>SARAH ROSE NOBLE, HILARY   )<br>JEANETTE PATTERSON, and       )<br>**MICHAEL McGEEHAN TUCKER**, )<br>                                                          )<br>                    Defendants          ) | Case No.: A05-099 Cr. (JWS) |

## MOTION FOR JUDGMENT OF ACQUITTAL AND A NEW TRIAL

COMES NOW Michael Tucker, by and through counsel David R. Weber, of the firm of Vasquez & Weber, P.C., and pursuant to Federal Rules of Criminal Procedure ("F.R.Cr.P.") 29 and 33, submits this, his Motion For Judgment Of Acquittal And A New Trial. Mr. Tucker requests the Court enter a Judgment acquitting him of Count I, Conspiracy and to order a new trial should the Judgment be overturned on appeal or should the Court not wish to issue an outright acquittal. The reasons for Mr. Tucker's motion are set forth below.[1]

This Court must assess the sufficiency of the evidence under F.R.Cr.P. 29, reviewing the evidence as a whole, including all inferences that may be reasonably drawn from it. It must do so in a\ light most favorable to the government, and decide whether a rational trier of fact can find guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Terry, 911 F.2d

---

[1] Mr. Tucker has not been able to obtain and review a Transcript of Proceedings and submits the instant motion based upon the time restrictions set. Mr. Tucker does not waive any error that may appear from a review of the complete Transcript of Proceedings and Record of Appeal.

272 (9th Cir. 1990); United States v. Gillock, 886 F.2d 220, 221 (9th Cir. 1989). United States v. Soto, 779 F.2d 558, 560(9th Cir. 1986).

Where no rational trier of fact could find guilt beyond a reasonable doubt, the conviction must be reversed. Jackson v. Virginia, 443 U.S. at 317. The Supreme Court held that where reasonable jurors must necessarily have a reasonable doubt as to guilt, the judge must acquit. "Because no other result is permissible within the fixed bounds of jury consideration." Jackson v. Virginia, 443 U.S. at 318 n.11 (quoting Curley v. United States, 160 F.2d 229, 232-33 (D.C.Cir. 1947)). As applied: United States v. Martinez, 122 F.3d 1161 (9th Cir. 1997); United States v. Alvarez, 814 F. Supp. 908 (D. Idaho 1993).

The court's "responsibility is to ensure that the government has shouldered its burden and adequately proved its case." United States v. Hardy, 895 F. 2d 1331, 1335 (11th Cir. 1990). In this regard, the government must do more than prove that the defendant's participation in the crime charged is possible or even plausible. It must prove the defendant's guilt beyond a reasonable doubt and to the exclusion of every reasonable doubt. Although the evidence need not exclude every reasonable hypothesis of innocence in order to sustain a guilty verdict, a conviction predicated on conjecture cannot be sanctioned by the court. United States v. Toller, supra, at 1433; United States v. Perez-Costa, 36 F.3d 1552, 1557 (11th Cir. 1994), cert. denied, 515 U.S. 1145 (1995); United States v. Hardy, supra.

In fixing the degree of prejudice due to receipt of inadmissible evidence, the probative force of such evidence must be compared with that of the admissible evidence which supports the verdict. United States v. Johnson, 618 F.2d 60 (9th Cir. 1980). There are instances where such a strong impression has been made on the minds of the jury by illegal and improper testimony that its subsequent

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122   FACSIMILE (907) 279-9123
VW.LAW@ACSALASKA.NET

1  withdrawal (or limitation) will not remove the effect caused by its admission.
2  Throckmorton v. Holt, 180 U.S. 552, 567 (1901). This is one of those instances.
3      The Government brought Mr. Tucker to trial with allegations of having been
4  involved in a Conspiracy beginning in July of 2002 (but dating back to 1999) and
5  ending in December of 2004. Mr. Tucker went to trial alone.
6      For most of 1999 (all but 20 days), Mr. Tucker was 13 years old. Similarly,
7  in 2002, he was 16 years old. Only as of December 2003 was Mr. Tucker of age.
8      At Mr. Tuckers trial the Government submitted a great deal of evidence
9  concerning Mr. Hollimon's criminal activities with Ms. Nobel during Mr. Tucker's
10 minority. The evidence established that Ms. Hollimon and Ms. Noble werestill
11 conspiring with one another for approximately three months (ending about March
12 24, 2004) after Mr. Tucker came of age. Absolutely nothing tied Mr. Tucker to
13 Ms. Noble's activities. The Court so found, acquitting Mr. Tucker of that
14 Conspiracy theory. Not, however, before the jury was allowed to hear the
15 prejudicial recitation of someone else's criminality at Mr. Tucker's trial.
16     Ms. Pattison's criminal conspiracy with Ms. Hollimon began on
17 approximately March 25, 2004 and ended on approximately July 30, 2004.
18 Thereafter, Ms. Pattison's involvement was not conspiratorial: she burgled her ex-
19 co-conspirator, Ms. Hollimon. The Hollimon/Pattison conspiracy involved Alaska
20 and Utah.
21     The direct evidence concerning Mr. Tucker consisted of two transactions:
22 one in Alaska on July 22, 2004 and another in Arizona on August 11, 2004. There
23 was no evidence that Mr. Tucker directed, assisted or benefited from the
24 Hollimon/Pattison conspiracy in any way. Nevertheless, the entire
25

VASQUEZ & WEBER, P.C.
943 WEST SIXTH AVENUE, SUITE 132
ANCHORAGE, ALASKA 99501
(907) 279-9122    FACSIMILE (907) 279-9123
VW.LAW@ACSALASKA.NET

Hollimon/Pattison conspiracy was laid before the jury, another prejudicial recitation of someone else's criminality at Mr. Tucker's trial.

This Court initially declined to acquit Mr. Tucker of the Hollimon/Pattison Conspiracy theory. Later, however, the Court *sua sponte* and *sub silentio* reconsidered (jury question), albeit with the Government's acquiescence.

In addition to the prejudicial recitation of the criminality of Ms. Hollimon, Ms. Noble and Ms. Pattison, the Government tried to prove Mr. Tucker's knowledge and guilt via the co-conspirator theory of a statement of party opponent. With Ms. Pattison, the Government submitted Ms. Hollimon's alleged statements (e.g. "I am stealing coins from my employer.") made before Ms. Pattison went to Utah and before Mr. Tucker's July 22, 2004 coin sale and which did nothing to further the conspiracy. The second incident allegedly had Mr. Tucker and another male at Ms. Hollimon's home while Ms. Hollimon and Ms. Pattison were conspiring over the telephone. However, Ms. Hollimon's identification of Ms. Tucker ("L.P.") again did nothing to further the conspiracy. The final set of statements, from when Ms. Pattison returned to Alaska were made after Ms. Pattison and Mr. Tucker's alleged conspiratorial participation had ceased and did nothing to further the conspiracy. In short, not being within the course and scope of the conspiracy, the statements were hearsay.

Relying on United States v. Smith, 519 F.2d 516 (9th Cir. 1975), the Government explained to the Court that it could introduce the above hearsay, later establishing that thee declaration was made in furtherance of the conspiracy, during the pendency thereof as well as independent proof of the existence of the conspiracy. But the Government never did so. At best, the Government provided Ms. Hollimon's evidence for a Hollimon/Tucker conspiracy, utterly abandoning

the furtherance and pendancy prongs. Of course, the prejudicial information was before the jury by then.

What remains of competent evidence of Mr. Tucker's knowledge that the coins were stolen comes solely from Ms. Hollimon. Standing alone, Ms. Hollimon's testimony that should be examined "with greater caution than that of other witnesses." But it did not stand alone: It was bolstered by the predicateless hearsay of Ms. Pattison. Were it to have stood alone, the prior statements of Ms. Hollimon concerning Mr. Tucker's lack of knowledge would likely have carried far greater weight with the jury. Ms. Hollimon's utter inability to provide any precision in her testimony concerning dates and places would have made a far greater impression on the jury, standing alone. These items should carry weight with the Court now and result in an acquittal for Mr. Tucker.

There is another reason for an acquittal. While the Government's allegations were of a conspiracy ending in December of 2004, its proof only extended to August of 2004. Yet the Government offered Ms. Hollimon's alleged $2000.00 oxycontin purchase from Mr. Tucker in Arizona in September of 2004. While the September 2004 Arizona trip may have been a necessary fact to punctuate the end of Ms. Hollimon's coin dealing with Mr. Tucker, the alleged drug transaction was not. It stands as a highly prejudicial uncharged criminal act upon the record, devoid of any relevance. Despite instructions to the contrary, it is likely that the large September 2004 drug sale entered into the jury's calculus. The Court, however, can and should see the matter for what it is and discount it accordingly.

Given the jury's verdicts, they must have questioned whether Mr. Tucker received $5000.00 worth of coins in Arizona or whether all the coins he did receive

were stolen. The conviction on Count I necessarily implies a finding of knowledge and intent. In addition to the *de minimus* reward for his activities, Mr. Tucker's provision of his license data on the July 22, 2004 check and his fingerprint on the August 11, 2004 check, point to Mr. Tucker's lack of knowledge and criminal intent. Ms. Hollimon's duping of Mr. Quast and Ms. Day, as well as her initial uncertainty as to whether she duped Mr. Tucker constitute a reasonable doubt as to Mr. Tucker's knowledge and criminal intent.

The Court is respectfully requested to issue a Judgment of Acquittal on Count I. In addition, the Court is requested to Order a new trial, should its acquittal be overturned on appeal.

In the alternative only, Mr. Tucker requests a new trial pursuant to F.R. Cr.P. 33. Even though Mr. Tucker's reasons for requesting a new trial are the same as his reasons for requesting an acquittal, a motion for a new trial affords the Court greater latitude in reviewing the evidence and granting a remedy. Per Professor Wright: On a motion for judgment of acquittal, the Court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt, the motion for acquittal must be denied. On a motion for new trial, however, the power of the court is much broader. It may weigh the evidence and consider the credibility of witnesses. If the Court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted. Wright, Federal Practice and Procedure: Criminal 2d § 553. A motion for a new trial "should be granted 'only in exceptional cases in which the evidence preponderates heavily against the verdict.'" United States v.

1  Pimentel, 654 F.2d 538, 545 (9th Cir. 1981), citing Wright at § 553.  Because the
2  ***competent*** evidence "preponderates heavily" against Mr. Tucker's conviction, the
3  motion for a new trial should be granted, even if the acquittal is not.  The Court
4  heard the Government's failure to establish the co-conspirator predicates.  The
5  Court heard of Mr. Tucker's non involvement with Ms. Noble's and Ms. Pattison's
6  crimes.  The Court heard the utter irrelevance of the September drug transaction.[2]
7  As a matter of simple fairness and in the interest of justice, this Court should grant
8  Mr. Tucker a new, cleaner trial.

9      Respectfully submitted this 17th day of May 2006.

    Vasquez & Weber, P.C.
    Attorneys for Michael Tucker
    S/: David R. Weber,
    943 West 6th Ste. 132
    Anchorage, Alaska 99502
    (907) 279-9122/9123 fax
    vw.law@acsalaska.net
    Ak. Bar Assn. No. 8409083

CERTIFICATE OF SERVICE

I certify that on May 17, 2006 electronic service of a copy of this Motion For Judgment of Acquittal and A New Trial and a proposed order were provided to the Court for all counsel of record pursuant to Criminal Rule 49(b), Civil Rule 5(b)(2)(D) and Local Rules 5, 5.1(a) and 5.2(c)(2).

    S/: David R. Weber

---

[2]  In point of fact, Ms. Hollimon testified that she never gave coins for drugs.  Thus, the first coin transaction involving Mr. Tucker (July 22, 2004) would be the first time (assuming drugs were an alleged motivating factor) that drugs should have mentioned in connection with Mr. Tucker.  Unfortunately, however, Mr. Tucker was introduced to the jury by Ms. Pattison as her January 2004 drug dealer.  E.g. a bad person predisposed to do bad things.