DEBORAH M. SMITH
Acting United States Attorney

RETTA-RAE RANDALL
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: rettarae.randall@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. 3:05-CR-099-04-JWS |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **OPPOSITION TO** |
| ) | **DEFENDANT'S  MOTION FOR** |
| MICHAEL McGEEHAN TUCKER, ) | **JUDGMENT OF ACQUITTAL** |
| ) | **AND A NEW TRIAL** |
| Defendant. ) | |
| ) | |
| _____ ) | |

I.    INTRODUCTION.

        Between May 8, 2006, and May 10, 2006, Michael Tucker was tried on Count

1 in the First Superseding Indictment: Conspiracy in violation of 18 U.S.C. § 371, and

on Count 4 of the First Superseding Indictment: aiding and abetting the Interstate

Transportation of Stolen Property in violation of 18 U.S.C. §§ 2314 and 2.    On

May15, 2006, the jury returned a verdict of guilty as to Count 1and a verdict of not

guilty as to Count 4.    (The jury began deliberating around noon on May 10th,

requesting to re-hear the testimony of Jasmine Hollimon and John Straube on May

10th; they continued deliberating the day of May 11th, and returned on May 15th to

complete their deliberations and return their verdicts.)

Pursuant to Fed. R. Crim. P. 29 and 33, defendant now moves for a judgment

of acquittal and a new trial arguing that the admission of "illegal and improper"

testimony influenced the minds of the jurors.    No such objection was ever made at

trial and he fails to explain how the minds of the jurors could have been influenced.

He also ignores a great deal of the evidence which was presented against him.    What

is more inexplicable, he discusses the admission of testimony referencing 1999, which

was only admitted by him.    The indictment encompassed the dates of July, 2002,

through December, 2004.    Defendant's introduction into evidence of his client's age

in 1999 had no meaning or relevance, and was not introduced by the government.

Regardless, defendant's motions have no merit.

II.    <u>APPLICABLE LEGAL STANDARDS</u>.

A.    <u>RULE 29.</u>

Pursuant to Fed. R. Crim. P. 29, a defendant may make a motion for judgment

of acquittal at the close of the government's case and again after conviction. In this case, defendant made the appropriate motion at the close of the government's case and the Court denied his request.

In evaluating a defendant's Rule 29 motion for judgment of acquittal the evidence is to be reviewed in the light most favorable to the prosecution to determine "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Smith, 424 F. 3d 992, 1009 (9th Cir. 2005). "All reasonable inferences supporting the conviction must be drawn, including decisions regarding the credibility of witnesses." United States v. Witt, 648 F.2d 608, 611 (9th Cir. 1981). A challenge under Rule 29 is a challenge to the sufficiency of the evidence. See, 2 Wright, Federal Practice and Procedure, Criminal, § 446 at 654 (1982).

B.    Rule 33.

A motion for a new trial based on the argument that the verdict is contrary to the weight of the evidence does not require the same level of deference to the jury's view of the evidence and the witnesses; however, neither does it allow the court to simply substitute its judgment for that of the jury.

Fed. R. Crim. P. 33 states: "Upon the defendant's motion, the court may ... grant a new trial if the interest of justice so requires." The Rule itself grants broad

discretion to the district judge; however, the cases make clear that the granting of a defendant's motion for a new trial should occur "only in an exceptional case in which the evidence weighs heavily against the verdict." United States v. Merriweather, 777 F.2d 503, 507 (9th Cir. 1985).

While defendant correctly notes that the court has the power to review credibility under Rule 33, in fact, this exception to the general rule that issues of witness credibility are to be decided by the jury is an extremely narrow one. See, United States v. Kuzniar, 881 F.2d 466, 470-1 (7th Cir. 1989) ("The exception [permitting the court to take testimony away from the jury] is an extremely narrow one, however, and can be invoked only where the testimony contradicts indisputable physical facts or law." (citations omitted). Similarly, while Rule 33 grants broad discretion to trial court: "The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such as it would be a miscarriage of justice to let the verdict stand. Motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really 'exceptional cases'." United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985) (citations omitted). See also, United States v. Walker, 899 F.Supp. 14, 15 (D.D.C. 1995) ("Even where errors occur a new trial should be

granted only if the moving party has shown that the error was substantial, not harmless, and that the error affected the defendant's substantial rights.") United States v. Garcia, 978 F.2d 746, 748 (1st Cir. 1992) (discussing extremely narrow exception to general rule that credibility issues are for the jury).

III.    TUCKER HAS FAILED TO MEET HIS HEAVY BURDEN IN ORDER TO OVERTURN THE JURY'S VERDICT IN COUNT 1.

The evidence was more than sufficient to prove an agreement between Jasmine Hollimon, Hilary Pattison, and Michael Tucker, or Hollimon and Tucker to commit the crime of interstate transportation of stolen coins from Alaska. The evidence was not limited to only the testimony of Pattison and Hollimon, as inferred by defense motions. Corroborating evidence was provided by other witness testimony, and business and bank records. No error occurred affecting any substantial rights of Tucker.

Conspiracy is established when there is an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose. Once the existence of a conspiracy is established, evidence which establishes beyond a reasonable doubt that a defendant is even slightly connected with the conspiracy is sufficient to convict him of knowing participation in the conspiracy. For a conspiracy conviction, "the prosecution need not show the agreement to have been explicit. An implicit agreement may be inferred from the facts and circumstances of the case.

United States v. Boone, 951 F.2d 1526, 1543 (9th cir. 1991).  (Citations omitted.)

Jasmine Hollimon conspired with Sarah Noble, Hilary Pattison, and Michael Tucker to engage in the interstate transportation of stolen coins across state lines.  The government conceded at the close of its case that Hollimon's conspiracy with Noble did not include Tucker.  However, the manner and means of that conspiracy was relevant in showing how Hollimon conspired with the others - she stole coins from Oxford, sent them via Express Mail out of state, where her co-conspirators sold the coins, depositing most of the money from the sale into Hollimon's Wells Fargo account while keeping part for themselves.

Pattison testified that she knew what Noble and Hollimon were doing and that she agreed to participate for money and oxycontin when she went to Utah in 2004.  According to Pattison, Tucker was contacted by Hollimon in January, 2004, as a source for oxycontin - he was the first person on the list of people to call.  Pattison testified that she did not discuss stolen coins with Tucker, but she described that she learned what Hollimon was doing when they were "under the influence."

Hollimon described the relationship with Tucker as first a business one, and then a social one, with Pattison, Tucker and her all hanging out together more than once a week.  She thought that Tucker was present when she had a conversation with Pattison about the stolen coins.  As Hollimon testified, most of her friends knew that

she was stealing the coins; they had addictions also.  It is reasonable for the jury to infer that Hollimon talked about stealing the coins when she was using drugs, and therefore when she was "hanging out" with Pattison and Tucker.

What Tucker fails to present in his motions is the additional overwhelming evidence of Tucker's involvement with the conspiracy and the stolen coins.  Toni Goodrich, the owner of Oxford, first discovered the name of Michael Tucker on one of the voided invoices.  She testified that she could tell by Oxford's canceled check that Hollimon had purchased the coins from Tucker who initialed the receipt and had to, of course, endorse the check and provide his address to the bank for identification. Tucker's professed lack of sophistication does not make him less culpable.  The in-state sale to Oxford of the stolen coins is evidence of Tucker's motive, and knowledge, and was relevant to his later participation in the conspiracy from Arizona. Proof of this sale corroborates Hollimon's testimony that she later meet Tucker to get a split of the money, and that the goal was to purchase oxycontin.

Why was Tucker, as opposed to others, only used for one in-state sale - Hollimon testified it was because he looked so young it could raise suspicion.  She also testified that she sent the coins out of state so they could not be tracked.  The coin shops in state were "very close" and talked with each other all of the time.

Bank records support her testimony as to how the conspiracy operated.  Just as

there were multiple cash deposits within a short period of time to Hollimon's bank account in Seattle and Utah, the same was done in Tempe, AZ, Tucker's residence at the time in question. (The indictment originally alleged that Tucker's involvement began in July, 2004, and went through December, 2004. The government was forced to enter into a cooperation agreement with Hollimon upon Tucker's proceeding to trial; Hollimon clarified that the only cash deposits from Tucker were strictly those in Tempe, AZ, dating from July 27, 2004, through August 12, 2004. A fifth and final mailing resulted in no cash deposit from Tucker.) The total of the deposits from Tempe, AZ, was in excess of $5,000.00. An Arizona Driver's License gave Michael Tucker's address in Tempe, AZ.

John Straube testified that his company, American Precious Metals, Inc., in Phoenix, AZ, purchased 8 gold Eagles and 1 gold Canadian Maple Leaf from a young man on August 11, 2004, for $3553.00. A check was written to an individual named Mike Tucker. The check was later voided by American Precious Metals because the Mike Tucker in question only had one piece of identification and the bank required two pieces. Straube remembered the transaction because the check was then returned for a cash payout. A cash deposit then appeared on August 12, 2004, in the Wells Fargo account of Hollimon for $3500.00. A cash deposit close in time and place to three others. The evidence, albeit circumstantial, was strong

Tucker argues that the purchase of oxycontin during Hollimon's trip to visit him in Arizona between September 3 - 6, 2004, was prejudicial. Evidence of any drug transaction is prejudicial; however, in this case such prejudice is outweighed by its relevance. A defense presented by Tucker appeared to be a lack of sophistication - he did not keep much of the proceeds. Arguably Tucker's keeping such a small amount of the August 11 sale of stolen coins was to help finance Hollimon's purchase from him of the cheaper oxycontin during her visit to Arizona. Or, Tucker's keeping such a small amount of the August 11 sale, justified him keeping all of the proceeds from a fifth transaction about which Hollimon testified and for which no deposit to her account was made by Tucker - he needed the money to purchase the oxycontin. Regardless, the purchase of oxycontin from Tucker by Hollimon in early September 2006, shortly after the cash deposits into her account, is just as relevant as the testimony that she received oxycontin in the mail from Tucker while he was in Tempe, and that he was the source of oxycontin for herself and Pattison while he  lived in Alaska.   Financing oxycontin was the motive for the conspiracy between them, and stolen coins were the source of the financing. The drug relationship was inextricably intertwined with the agreement to sell the stolen coins. See United States v. Soliman, 813 F.2d 227, 279 (9th Cir. 1987).

IV.  CONCLUSION

For the same reasons that the Court denied defendant's Rule 29 motion at the end of the government's case, defendant's instant motion should be denied. The evidence supported the government's claims and the jury's verdict. The theories and testimony cited by defendant in his motion were raised and argued in the defense closing and rejected by the jury. Tucker does not even attempt to address the evidence in support of the jury's decision. By failing to address the applicable standard, he per se fails to meet his heavy burden to overcome the jury's decisions.

Tucker's Rule 33 motion fails on the same analyses. While the government acknowledges the standards are different, the "interests of justice" claim does not allow the Court to simply substitute itself in the role of a jury. In a very narrow area the Court may take away a verdict based, for example, on uncorroborated wholly incredible testimony. Absent any specific allegations, however, the Court is not empowered to use Rule 33 as a lower standard sufficiency argument.

Because the evidence amply supported the jury's verdict, the Court should deny

//

//

//

Tucker's motions.

RESPECTFULLY SUBMITTED this 24th day of May, 2006, in Anchorage,

Alaska.

DEBORAH M. SMITH
Acting United States Attorney


  s/ Retta-Rae Randall
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: rettarae.randall@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24th , 2006,
a copy of the foregoing  was served
electronically on David Weber.

s/Retta-Rae Randall